FILED IN
COURT OF CRIMINAL APPEALS

April 8, 2015

ABEL ACOSTA, CLERK

PD-1396-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/7/2015 9:43:23 AM
Accepted 4/8/2015 8:25:15 AM
ABEL ACOSTA
CLERK

NO. PD-1396-14

**JON THOMAS FORD**,
Appellant

v.

**THE STATE OF TEXAS,**
Appellee

APPELLEE'S BRIEF ON THE MERITS
AFTER GRANTING OF
DISCRETIONARY REVIEW

In the Court of Appeals for the
Fourth Court of Appeals District of Texas
at San Antonio

_____

On appeal from the Fourth Court of Appeals,
No. 04-12-00317-CR, and the 186th District Court of
Bexar County, Trial Court No. 2010-CR-7741,
Honorable Maria Teresa Herr, Judge Presiding

_____

NICHOLAS "NICO" LaHOOD
Criminal District Attorney
Bexar County, Texas

CATHERINE BABBITT
KIRSTA MELTON
KATHERINE CUNNINGHAM
Assistant District Attorneys

JAY BRANDON
Assistant District Attorney
SBN 02880500
101 W. Nueva
San Antonio TX 78205
(210) 335-2418
jay.brandon@bexar.org

TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES                                    3

STATEMENT OF THE CASE                                  4

STATEMENT OF PROCEDURAL HISTORY                        4

GRANTED GROUNDS FOR REVIEW

**GROUND FOR REVIEW ONE**
**WHETHER A WARRANTLESS**
**SEARCH OF INVOLUNTARILY**
**CONVEYED HISTORICAL CELL**
**TOWER DATA IS AN ILLEGAL SEARCH**                    4

**GROUND FOR REVIEW TWO**
**THE COURT OF APPEALS' HOLDING,**
**THAT CELL TOWER DATA INFORMATION**
**CONVEYED FROM A PHONE INVOLUNTARILY,**
**IS PUBLIC INFORMATION UNDER THE**
**THIRD PARTY RECORD DOCTRINE; [sic]**
**IS CONTRARY TO *RICHARDSON V. STATE*.**              4

**STATE'S RESPONSE**
**THE COURT OF APPEALS CORRECTLY**
**HELD THAT FORD COULD NOT COMPLAIN**
**OF RECORDS PROPERLY ACQUIRED BY**
**COURT ORDER FROM A THIRD PARTY.**                    5

(A third ground for review was not granted.)

PRAYER FOR RELIEF                                      15

CERTIFICATE OF COMPLIANCE                              16

CERTIFICATE OF SERVICE                                16

# INDEX OF AUTHORITIES

Page

*Ford v. State*, 444 S.W.3d 171 (Tex.App. –San Antonio 2014, pet. granted) .......................................... *passim*

*In re Application of the U.S. for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013) ............................ 8

*Richardson v. State*, 865 S.W.2d 844 (Tex.Crim.App. 1993) ............................ 5

*Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed. 220 (1979) ............................ 8

*State v. Granville*, 423 S.W.3d 399 (Tex.Crim.App. 2014) ............................ 9

*United States v. Jones*, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) ............................ 7

*United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983) ............................ 6

## STATEMENT OF THE CASE

This was a murder trial, in which Appellant Jon Thomas Ford was found guilty by a jury. The jury assessed punishment at imprisonment for forty years.

## STATEMENT OF PROCEDURAL HISTORY

On August 20, 2014, the Fourth Court of Appeals handed down an opinion overruling Appellant's eighteen points of error and affirming his conviction. The majority opinion by Justice Marialyn Barnard was joined by Chief Justice Stone. *Ford v. State*, 444 S.W.3d 171 (Tex.App. –San Antonio 2014, pet. granted). Justice Chapa wrote a dissent, on the issue now before this Court.

On February 4, 2014, this Court granted review of Appellant's first two grounds for review, including oral argument. A third ground was not granted. This brief follows the filing of Appellant's brief on the merits on March 24, 2015.

**GRANTED GROUND FOR REVIEW ONE**
**WHETHER A WARRANTLESS**
**SEARCH OF INVOLUNTARILY**
**CONVEYED HISTORICAL CELL**
**TOWER DATA IS AN ILLEGAL SEARCH**

**GRANTED GROUND FOR REVIEW TWO**
**THE COURT OF APPEALS' HOLDING,**
**THAT CELL TOWER DATA INFORMATION**
**CONVEYED FROM A PHONE INVOLUNTARILY,**
**IS PUBLIC INFORMATION UNDER THE**
**THIRD PARTY RECORD DOCTRINE;** [sic]
**IS CONTRARY TO *RICHARDSON V. STATE*.**

4

**STATE'S RESPONSE**
**THE COURT OF APPEALS CORRECTLY**
**HELD THAT FORD COULD NOT COMPLAIN**
**OF RECORDS PROPERLY ACQUIRED BY**
**COURT ORDER FROM A THIRD PARTY.**

TO THE HONORABLE JUDGES OF SAID COURT:

*What is Not Preserved for Review*

The court of appeals held that Appellant did not raise a Texas constitutional claim before the trial court. *Ford, supra*, 444 S.W.3d at 191. Ford has not attacked this holding. *Richardson v. State*[1], on which Appellant attempts to rely now, is based on a provision of the Texas Constitution.

Furthermore, *Richardson* has no clear holding and is inapplicable to this case. *Richardson* concerned the use of a pen register, which like the GPS device in *United States v. Jones* required a physical intrusion by police to obtain the phone information.[2] The *Richardson* opinion concludes, "It follows that the use of a pen register may well constitute a 'search' under Article I, §9 of the Texas Constitution. The question remaining is whether such a search would be 'unreasonable' in the absence of probable cause."[3] But the opinion remands the case to the court of appeals to answer that question.

This claim based on the Texas Constitution was not raised in the trial court

---

[1] 865 S.W.2d 844 (Tex.Crim.App. 1993)
[2] *Id.* at 846.
[3] *Id.* at 953-54.

5

and does not apply to this case.

Appellant also makes in passing a First Amendment claim, that collecting cell phone data might chill his freedom to associate. Appellant's brief at 7-8. However, the court of appeals also held that this claim was not preserved. The court of appeals held that Ford did not explain how gathering such information might chill his First Amendment rights, so this issue was inadequately briefed for review.[4]

The court also held that this claim fails on the merits, as it does. The State used the cell tower data to show Ford's locations on the night of the murder, not the people with whom he associated. Furthermore, Ford's friend Alan Tarver testified without objection to the same information, that he was the one calling and texting Ford that night.

The First Amendment claim is not preserved and has no merit.

### *The Preserved Argument: Jones and the Fourth Amendment*

"A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."[5]

What Ford did present to the trial court in both his motion to suppress and orally, was a Fourth Amendment claim based on *United States v. Jones*[6], which was handed down from the Supreme Court very shortly before Ford's trial. *Jones*,

---

[4] 444 S.W.3d at 192
[5] *United States v. Knotts*, 460 U.S. 276, 281, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983)
[6] 132 S.Ct. 945, 181 L.Ed.2d 911 (2012)

however, by its terms is inapplicable to this case and does not support Ford's argument.

The Fourth Court ruled against Ford on this claim, finding *Jones* inapplicable. In *Jones* law enforcement officers attached a GPS device to the suspect's car, without obtaining a warrant, and monitored the suspect's movements for nearly a month. The Supreme Court held this violated the suspect's Fourth Amendment rights against unreasonable searches, because officers physically intruded into Jones' personal property, his car, to place the tracking device. Justice Scalia's majority opinion relied explicitly on a trespass theory. Agents had no right to touch Jones' car without a warrant.[7]

In this case, police never touched Ford's phone, nor made any other physical contact with him or his personal property.

But the Fourth Court relied primarily on the fact that the cell tower data was not collected by police. It was collected by AT&T, the carrier from whom Ford obtained a phone and cell phone coverage. "Essentially, once an individual voluntarily exposes information to a third party, it can be used for any purpose, such as conveying it to law enforcement authorities."[8]

This is a longstanding rule of law, that information someone voluntarily

---

[7] 444 S.W.3d at 187-88; *Jones*, 132 S.Ct. at 249.
[8] *Id.* at 188.

conveys to a third party is not subject to Fourth Amendment protection.[9] It has been upheld in this same context by the Fifth Circuit Court of Appeals.[10]

Ford attacks this holding in a variety of ways, none of them persuasive. First Ford claims the quantity of the data somehow changes its status from unprotected to private: "…obtaining a great deal of location information implicates the Fourth Amendment because tracking an individual's movements over a long period exceeds what law enforcement would be able to do." Appellant's brief at 6. This conclusion is drawn from the facts of *Jones*, where agents tracked the suspect's movement for 28 days. Here, though, the information covered a very limited amount of time, a few hours on the night of the murder. Furthermore, *Jones* was decided based not on the time spent but on the physical intrusion. There was none here.

It is also worth noting that the tracking information in *Jones* was collected by the government specifically for law enforcement purposes. In the instant case AT&T collected the information in the course of its normal business dealings with Ford, not as an agent of the state. The information did not become relevant for police until Ford became the prime, indeed only, suspect in the murder case. The information had all been innocently collected from him by that time. The records

---

[9] *Smith v. Maryland*, 442 U.S. 735, 745, 99 S.Ct. 2577, 61 L.Ed. 220 (1979); cited in *Ford, supra*, 444 S.W.3d at 189.
[10] *In re Application of the U.S. for Historical Cell Site Data*, 724 F.3d 600, 610 (5th Cir. 2013)

existed in the care of the third party, with no intrusion by police.

Ford also argues, attempting to compare his case to *State v. Granville*[11], that a cell phone contains a great deal of personal information. Appellant's brief at 8. While that may be true, it is irrelevant to this case, because the State did not obtain any of that personal information. In *Granville* police searched the defendant's cell phone without a warrant, as a search incident to arrest. This Court held that probable cause and a warrant are required for such a search, because a cell phone is a mini-computer, containing photos, personal messages, and other information held privately in the phone.

But the Court also held that officers "could have reasonably inspected the outside of appellant's cell phone; they could have tested it for fingerprints or DNA material because portions of the cell phone are routinely exposed to the public."[12] Location data is similar to the outside of the cell phone, routinely exposed to the public. Police in this case never possessed Ford's phone, never intruded into it. They obtained records from a third party, to whom Ford had willingly given them.

This is the primary holding by the court of appeals, and Ford does not explain why it is wrong. He claims his case is distinguishable from, e.g., *Application, supra*, because information was "involuntarily" conveyed from his phone when he <u>received</u> phone calls and texts while busy murdering his former

---

[11] 423 S.W.3d 399 (Tex.Crim.App. 2014)
[12] 423 S.W.3d at 415-16.

girlfriend and her dog. Therefore, he argues, he didn't voluntarily convey his location information to AT&T.

But that is not what the Fourth Court held. "Ultimately, Ford voluntarily decided to obtain a cell phone, chose AT&T as a service provider, and availed himself of the benefits of its network of cell towers."[13] Ford's voluntarily acts, which exposed his locations to a third party and ultimately to police, were obtaining a cell phone and carrying it with him that night. In essence, Ford attached a GPS device to himself. The only intrusion into his private sphere was by himself. The argument Ford makes now would have legal force only if government agents had Superglued his phone to his hand, leaving him unable to travel without it.

Ford has not responded to this holding by the court of appeals. It is based on longstanding precedent and nothing in this case distinguishes it from that precedent. Ford argues that the search of his records without a warrant was unconstitutional, but that mistakes what happened in his case. This was not a search. It was the acquisition of records held by a third party. It was done according to the applicable statute, which did not violate the Fourth Amendment. See below.

_____

[13] 444 S.W.3d at 190.

*No Expectation of Privacy in One's Whereabouts*

In his motion to suppress the cell tower records, Ford claimed, "All individuals have a reasonable expectation of privacy as to their whereabouts and as to electronic records that would disclose their whereabouts…"[14] This is the premise for all of Ford's arguments, and it is simply untrue. No one has a reasonable expectation of privacy as to his whereabouts when he is travelling on public roads and skulking through a condominium complex.[15] If Ford's argument were correct, he could have moved to suppress the images of his car and himself captured by the security camera of the bank across the street from the murder scene. Any suspect could successfully move to suppress eyewitness testimony placing him at the scene of a crime. Ford could have suppressed the DNA testimony, because it placed him inside the victim's home. If one's whereabouts were private, most traditional evidence would not be admissible.

This is of course not the case. Police seized nothing from Ford. They did not intrude into his home, car, or other personal space in which he had a legitimate expectation of privacy. Instead they requested records from AT&T by way of two court orders signed by two different district judges, as the statute requires. By the time the records were obtained, Ford had no privacy interest in them. Essentially, he had no standing to complain.

---

[14] (Supp.CR 177)

[15] See quote from *U.S. v. Knotts, supra*, at the beginning of this argument.

11

*The Statute*

Ford continually attacks the acquisition of the cell tower records as a warrantless search. However, the records were obtained pursuant to the applicable statute, Art. 18.21, Sec. 5, V.A.C.C.P., which says:

> (a) A court shall issue an order authorizing disclosure of contents, records, or other information of a wire or electronic communication held in electronic storage if the court determines that there is a reasonable belief that the information sought is relevant to a legitimate law enforcement inquiry.

The State not only complied with this statute, it went far beyond it. The applications for the court orders established not just that the information was "relevant to a legitimate law enforcement inquiry." It established probable cause for a search for the specific records being sought. The information was conveyed by an assistant district attorney, but had been obtained by Det. Leroy Carrion of the San Antonio Police Department, the lead detective on the case.

The application informed the judges that: the complainant had been found dead in her condominium, with no sign of forced entry and nothing missing except her dog; her death had been ruled a homicide; she had been at a New Year's Eve party the night before with others including Jon Thomas Ford; Ford had left the party before the others; two witnesses drove by Ford's house a few blocks from the victim's condo and did not see his car parked there; Ford told the detective he had been home asleep before midnight; a surveillance video showed a vehicle matching

12

Ford's white Tahoe entering and exiting the condo complex twice; it also showed a person dressed similarly to the way Ford had been that night entering the complex on foot; an hour later the same person left the complex; five minutes later the car resembling Ford's drove past; the detective had obtained Ford's cell phone records with a subpoena, which showed he had checked his voicemail at 2:30 a.m., about twenty minutes after the white Tahoe had driven away from the victim's complex, and also a time when Ford had claimed to be asleep.[16]

This is the same information conveyed to a different judge in an affidavit by Detective Carrion to obtain a search warrant of Ford's home and car.[17] In another part of the majority opinion, the Fourth Court specifically found that this affidavit established probable cause for a search.[18] Two different district judges reviewed the applications and signed orders for AT&T to provide the cell tower records to police.[19]

So while the acquisition of these records may technically have been done without a warrant, the State used the equivalent, an order signed by a district judge based on probable cause to search. Any rights Ford may have had affected by this acquisition were protected as fully as they would have been by a search warrant.

---

[16] Supp.CR 180-83
[17] CR 101-04
[18] 444 S.W.3d at 193
[19] Supp.CR 189, 199

*The Acquisition Did Not Violate the Fourth Amendment*

As set out above, the State not only followed the applicable statute, but did more than it required, establishing probable cause for a search to the satisfaction of two district judges. To prevail in this appeal, Ford would have to argue that the statute violates the Fourth Amendment, which he has not done. Nor could he successfully do so.

First, the statute doesn't authorize a search, it authorizes the acquisition of records from a third party, as set out above. The Fourth Amendment does not apply to this procedure.

More importantly, the process used in this case did not violate the Fourth Amendment. The Fourth Amendment says, in relevant part, "…no Warrants shall issue, but upon probable cause, supported by Oath or affirmation…" A warrant is an order signed by a judge after a finding of probable cause. That was what happened in this case. The finding of probable cause was based on the sworn affidavit of a police officer. The information was conveyed to the court by a written pleading signed by an assistant district attorney, an attorney and an officer of the court.

Attorneys are subject to disciplinary sanctions for signing false pleadings. Texas Rules of Professional Conduct 3.01 and 3.03. An application filed by a lawyer acts as an affirmation, assuring the magistrate of the accuracy of its

14

contents.

So the court orders issued in this case were the equivalents of search warrants. If this had been a search, they would have fully protected Ford's Fourth Amendment rights.

But this wasn't a search.

PRAYER FOR RELIEF

The State prays that this Court will affirm the judgment of the court of appeals.

Respectfully submitted,

NICHOLAS "NICO" LaHOOD
Criminal District Attorney
Bexar County, Texas

*Jay Brandon*

————————————————
JAY BRANDON
Assistant Criminal District Attorney
Bexar County, Texas
101 West Nueva, 3rd Floor
San Antonio, Texas 78204
(210) 335-2418
State Bar No. 02880500
jay.brandon@bexar.org

Attorneys for the State

## CERTIFICATE OF COMPLIANCE

I certify, in accordance with Rule 9.4 of the Texas Rules of Appellate Procedure that this document contains 3,014 words.

*Jay Brandon*
_____
JAY BRANDON


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing brief was sent by electronic mail to Cynthia E. Orr, Attorney for Appellant, on the 7th day of April, 2014.

*Jay Brandon*
_____
JAY BRANDON