FILED IN
COURT OF CRIMINAL APPEALS

April 30, 2015

ABEL ACOSTA, CLERK

PD1396-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/28/2015 8:43:26 PM
Accepted 4/30/2015 12:20:50 PM
ABEL ACOSTA
CLERK

**Cause No. PD-1396-14**

## IN THE TEXAS COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| **JON THOMAS FORD,** | § | |
| Petitioner/Appellant, | § | **FROM THE FOURTH** |
| | § | **COURT OF APPEALS** |
| vs. | § | **SAN ANTONIO, TEXAS** |
| | § | **No. 04-12-00317-CR** |
| **THE STATE OF TEXAS,** | § | |
| Respondent/Appellee. | § | |

### PETITIONER'S REPLY TO APPELLEE'S BRIEF ON THE MERITS AFTER GRANTING OF DISCRETIONARY REVIEW

On appeal from Cause No. 2010-CR-7741
IN THE 186th DISTRICT COURT
BEXAR COUNTY, TEXAS

CYNTHIA EVA HUJAR ORR
Bar No. 15313350
GOLDSTEIN, GOLDSTEIN & HILLEY
310 S. St. Mary's St.
29th Floor Tower Life Bldg.
San Antonio, Texas 78205
210-226-1463
210-226-8367 facsimile
whitecollarlaw@gmail.com

ATTORNEY FOR PETITIONER/
APPELLANT - Jon Thomas Ford

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... iii

Issues Presented ........................................................................................................ 1

    I.     Whether a warrantless search of involuntarily conveyed historical cell tower data is an illegal search

    II.    The Court of Appeal's holding, that cell tower data information conveyed from a phone involuntarily, is public information under the third party record doctrine; is contrary to *Richardson v. State*, 865 S.W.2d 844 (Tex. Crim. App. 1993)

Reply ......................................................................................................................... 1

Certificate of Compliance ....................................................................................... 20

Certificate of Service ............................................................................................... 20

# TABLE OF AUTHORITIES

**Cases:**

*Barfield v. State*, 416 S.W.3d 743 (Tex. App. Houston [14[th] Dist.], no pet). ......... 17

*In re Applications of the U.S.A. for Historical Cell-Site Data*, 724 F.3d 600 (5th Cir. 2013) ................................................................................................ 15, 17

*Richardson v. State*, 865 S.W.2d 944 (Tex. Crim. App. 1993) .......... 1, 4, 12, 13, 14

*Riley v. California*, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) ............ 2, 3, 12, 13, 14

*Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) ................. ................................................................................................ 7, 13, 14, 15

*Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965) ................ 11

*State v. Granville*, 423 S.W.3d 399 (Tex. Crim. App. 2014) ................................ 19

*Tracey v. Florida*, 152 So.3d 504 (Florida 2014) ................................................. 17

*United States v. Jones*, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012)..................... 2, 3, 14

*United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976)....... 5, 7

**Rules, Statutes and Other:**

18 U.S.C.  § 2703(d) ............................................................................................... 9

47 U.S.C. § 1002(a)(2)(B) .................................................................................... 10

Article 1, Section 9 of the Texas Constitution ................................................. 1, 4, 13

Art. 18.20 (5) of the Texas Code of Criminal Procedure......................................... 6

Art. 18.20 (15) of the Texas Code of Criminal Procedure....................................... 9

Art. 18.21 Sec. 5 of the Texas Code of Criminal Procedure .............................. 9, 10

Art. 18.21 Sec. 5(a) of the Texas Code of Criminal Procedure ............................... 9

Art. 38.23 of the Texas Code of Criminal Procedure ........................................... 3, 4

First Amendment of the United States Constitution .......................................*passim*

Fourth Amendment of the United States Constitution ....................................*passim*

ABA Standards on Third-Party Records: Critical Perspectives From a Technology-Centered Approach to Quantitative Privacy, 66 Okla L Rev 919 (2014) ..................................................................................................... 15

ABA Standards on Third-Party Records.................................................................. 15

ABA Journal, Kerr and Nojeim, The Data Question: Should the Third-Party Records Doctrine Be Revisited? (August 2012)..................................................... 15

Electronic Communications Privacy Act of 1986 ..................................................... 5

Stored Communications Act ...........................................................................*passim*

*A Supermajority of Californians Support Limits on Law Enforcement Access to Cell Phone Location Information*, 8–9 (2008) Jennifer King & Chris Jay Hoofnagle [www.researchgate.net] ........................................................................ 2

*Who Knows Where You've Been? Privacy Concerns Regarding the Use of Cellular Phones as Personal Locators*, 18 HARV. J.L. & TECH. 307, 313 (2004).... 2

| | | |
|---|---|---|
| JON THOMAS FORD, | § | |
|     Petitioner/Appellant, | § | |
| | § | |
| | § | |
| vs. | § | Cause No. PD-1396-14 |
| | § | |
| | § | |
| THE STATE OF TEXAS, | § | |
|     Respondent/Appellee. | § | |

**PETITIONER'S REPLY TO APPELLEE'S BRIEF
ON THE MERITS AFTER GRANTING
OF DISCRETIONARY REVIEW**

Petitioner, Jon Thomas Ford (hereinafter "Ford") raises the First and Fourth Amendment to the United States Constitution, Article 1, Section 9 of the Texas Constitution, and the third party record doctrine in his brief on the merits after the grant of discretionary review).

## Issues Presented

I.    Whether a warrantless search of involuntarily conveyed historical cell tower data is an illegal search

II.    The Court of Appeal's holding, that cell tower data information conveyed from a phone involuntarily, is public information under the third party record doctrine; is contrary to *Richardson v. State*, 865 S.W.2d 944 (Tex. Crim. App. 1993)

## Reply

Ford complained about the intrusion on his associational conduct and cited the First Amendment, explaining that his associational movements, ostensibly his precise location at various times of the night, and what kinds of communications

he had with whom and using what applications, interfered with his First Amendment right to association. He specifically cited Justice Sotomayor's opinion, in *Riley*, *infra*, stating that such surveillance chills one's conduct. Here, the State sought, by information obtained without a warrant, to prove where Ford was; who he was communicating with; and the contents of his communications. Ford complained that his text communications, unanswered calls or texts, and data downloads were obtained. 4R12-14. He stated that this is specifically the situation Justice Sotomayor warned of when she noted "the Government's unrestrained power to assemble data that reveal private aspects of identity is susceptible to abuse." *United States v. Jones*, 132 S.Ct. 945, 956 (2012) (Sotomayor, J., concurring). His brief cited articles: *Who Knows Where You've Been? Privacy Concerns Regarding the Use of Cellular Phones as Personal Locators*, 18 HARV. J.L. & TECH. 307, 313 (2004); Jennifer King & Chris Jay Hoofnagle, *A Supermajority of Californians Support Limits on Law Enforcement Access to Cell Phone Location Information*, 8–9 (2008)[www.researchgate.net]. He complained that the State converted his personal cell phone into a government tracking device and used the information to tell where he had been during the course of the evening. And he set out in his brief, "Now, what was obtained here? We're not talking about subscriber information. We're not talking about number of calls. What we're talking about is the location." 4R27. Ford complained about the

obtaining of his associational conduct. See Appeal brief at pages 31, 33, 34, and 38; Reply brief at pages 16-17.

Justice Chapa, in her dissenting opinion, quoting *Riley v. California,* 134 S.Ct. 2473, 2490 (2014), was aware of Ford's briefed complaints when she wrote "[h]istoric location information is a standard feature on many smart phones and can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building." Although less precise than GPS records, *see Jones,* 132 S.Ct. at 955 (Sotomayor, J., concurring); *see also id.* at 963 (Alito, J., concurring in judgment), Ford also complained that the historic cell site data compiled by cell phone providers can generate a "comprehensive record of a person's public movements that reflect a wealth of detail about their familial, political, professional, religious, and sexual associations." Ford adequately briefed his First Amendment concerns.

Ford also raised his right to privacy, the warrant requirement, and argued violation of "state law" in this context. After counsel pointed out the acquisition of the data violated Texas law, the prosecutor argued, "[s]o any 38.23 argument that they would be making, which is that we have violated a provision of Texas law, totally aside and apart from the U.S. Constitution…" The prosecutor went on to state, "if the Court looks they should be able to determine that this is being brought

3

under—this 38.23 allegation…" 4CR22–23.  The warrant requirement under state law means the requirement under Article 1, § 9.

Further, Ford raised *Richardson v. State,* 865 S.W.2d 944 (Tex. Crim. App. 1993) and the fact that it demands a warrant for information from third-party records. *Richardson* held that using a pen register constitutes a "search" under Article I, § 9 of the Texas Constitution. Further, *Richardson* consisted of voluntary activities while; here, there are passive activities.

Ford argued that the third-party record doctrine does not apply in Texas and should not apply any longer in the context of acquisition of historic cell tower data (HCD), particularly where, as here, that data was wholly involuntarily relayed data. The dissent agreed, stating that "this application of the third party doctrine sweeps intimate details of a person's life outside the scope of the Fourth Amendment's protections… simply by [one] owning and using their cell phones." Appendix to Petitioner's Amended Brief, Dissent at 3. The dissent held Ford's Fourth Amendment rights were violated since the State did not obtain a warrant before searching through Ford's Historical Cell Site Data. Justice Chapa stated, in her dissent, that the majority created a harsh dichotomy, leaving a choice to either refrain from using a cell phone, which is a part of our everyday lives or "forego the protection of the Fourth Amendment." Since Ford has a reasonable expectation of

4

privacy in his "physical movements and location," the HCD should be suppressed as he argued below.

Petitioner states his rejection of a Stored Communications Act (hereinafter "SCA") application for HCD as adequate, by arguing that a warrant is required instead. Thus, the argument is that: the Act does not apply to this new information that did not even exist at the time the legislation was passed. The SCA was enacted to obtain much less. It was enacted as Title II of the Electronic Communications Privacy Act of 1986, and reflects the technology of the 1980"'s. Internet service providers temporarily stored copies of emails that its clients sent and then delivered them to their intended recipient and they also received batches of data to store or perform number crunching for their clients. This is why the SCA calls the information electronic communication service (emails) or remote communication service (data batches for storage or number crunching). So, the SCA has a very narrow scope that did not even include historic cell tower data, texts, contents of any email, or data automatically conveyed by a cell phone. Such information did not exist on the server. The statute's language has remained static and, more importantly, does not apply to the data here. It was intended to protect what we stored on external computers through a third party network server in the 1980's, out of concern that the Third Party record doctrine from *United States v. Miller,* 425 U.S. 435, 443 (1976) would make the information non-private and hurt

the business of internet service providers.[1]  The Texas statute, TCCP art. 18.20 (5), was intended to duplicate the federal Act.

Here, the information requested and obtained was much different and broader. Texas law only allows acquisition of stored information of electronic communications, not connection information.

Further, the technology did not even exist at the time for cell phones to convey stored electronic data.  Mobile phones, around for about three decades now, have evolved from a means of simple communication to a personal assistant that helps facilitate our every day lives.  They now contain and access from remote locations (clouds) mass amounts of private data and information.  The early 1980's brought the first generation of mobile phones, the "Bag phone" weighed several pounds, and "The Brick," a phone that weighed about 7 oz., could only make calls.

---

[1]  "*See* H.R. REP. NO. 99-647, at 19 (1986) (commenting that the questionable privacy protections available to users of computer networks 'may unnecessarily discourage potential customers [from] using such systems'); *id.* at 65–66 ('This provision reflects the rapidly growing importance of information storage and processing to the Nation's commerce. Today, the subject matter of commerce increasingly is information in electronic form and the processing of information itself has become a major industry. The secure storage of electronic information has thus become as important to the commercial system as the protection of paper records.'); S. REP. NO. 99-541, at 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3559 (noting that the uncertain privacy protections 'may unnecessarily discourage potential customers from using innovative communications systems' or 'discourage American businesses from developing new . . . forms of telecommunications and computer technology'). "Free at What Cost?: Cloud Computing Privacy Under the Stored Communications Acct, 98 Georgetown Law  J 1195, n. 179 (2010).

As the years went by, in the late 1990's cutting-edge features were added, like an internal antenna, mobile games, and the introduction of SMS text messaging. It wasn't until 2007 that the first iPhone was launched, which was the device that revolutionized the world by allowing users to surf the Internet, send emails, and use applications, or apps. These were computer services that performed many functions; find restaurants nearby, provide navigation to distant locations, modify photos, organize frequent purchase cards or business cards etcetera. Furthermore, cellphones started replacing cameras, calendars, and MP-3 music players. As technology advances, it gets harder and harder to distinguish cell phones from tablets or personal computers.

Thus, obtaining this information under the federal or Texas measures runs afoul of the Fourth Amendment. This information is distinct. It is not numbers dialed on a rotary dial phone, as in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)*,* or bank deposit slips and checks given to a bank, as in *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). It is information about a person's every location as each moves about throughout their

lives.  It is information about who they contact and who contacts them.  And it is whether they have received a text message, answered a call, checked their voicemails or received data updating an app.

The requests and orders, here, are not Fourth Amendment warrant equivalents as the State has argued. The affidavits in support of the orders issued did not state probable cause[2] or ask for a probable cause determination from the judges.  The applications read: "[t]he release of said cellular phone records, technical information, and technical assistance; are material and relevant to the investigation of a criminal offense; supporting information/'specific and articulable fact(s)' follows." The identical applications for the HCD, texts, emails and GPS data, list facts that show the body of DE was found on **January 2, 2009**.  No time or date of death is indicated. They further state that DE attended a party on December 31, 2008 with multiple friends, including Ford.  They say that Ford left the party before DE.  DE left the party with two friends.  Also they relay that the two friends drove by Ford's home and did not see his vehicle outside of his garage. It could have been inside the garage. In addition, the applications say that Ford claimed to have gone home before midnight and gone to sleep.  The applications state that video footage shows a vehicle similar to Ford's entering and exiting

---

[2] As this Court is aware, the good faith exception does not apply to warrants lacking probable cause.

8

Gallery Court and a man wearing clothes similar to Ford's walking into the condos' *cul-de-sac*. About an hour later, the person seen walking into the condo is seen walking out, according to the applications. And they allege that person is now carrying a white bag. Further, they describe that minutes later a vehicle matching the description of Ford's is seen driving by. At no time do the applications mention a time at which the crime occurred. Nor do they allege it happened from 12/31/2008 – 1/1/2009. There is no identification of Ford or his vehicle as being present at the condos. These facts do not state probable cause or even reasonable suspicion. SCR180–199. Nor do either application ask the court to make a probable cause determination or state that there is probable cause to believe that HCD, the texts, emails or GPS information will contain evidence of any crime.

Further, the applications do not even comply with the statutes. They do not state a "reasonable belief" or "that these are reasonable grounds to believe" that the facts shown are relevant to a legitimate law enforcement inquiry as required. See TCCP 18.21 Sec. 5(a) ("if the court determines that there is a reasonable belief") and 18 U.S.C. §2703(d) ("that there are reasonable grounds to believe"). Article 18.21 Sec. 5 of the TCCP only allows the issuance of an order for the "disclosure of contents, records, or other information of a **wire or electronic communication** held in electronic storage…." TCCP art. 18.21 Sec. 5 (emphasis added). An

electronic communication is "a transfer of signs, signals, writing, images, sounds, data, or **intelligence of any nature** transmitted in whole or in part by a wire, radio, electromagnetic, photo-electronic, or photo-optical system."  TCCP art. 18.20(15). Here, the State asked for and obtained "cellular site information."  This information is connection and location information, not information of transmitted intelligence as authorized by TCCP art. 18.21 Sec. 5.

47 U.S.C. § 1002 (a)(2)(B) provides, "with regard to information required solely pursuant to the authority for pen registers and trap and trace devices," a carrier need not allow the government to access "call-identifying information… that may disclose the physical location of the subscriber (except to the extent that the location may be determined from the telephone number)…."  47 U.S.C. § 1002(a)(2)(B).

Therefore, the applications for the records requesting: "cell site activate, numbers dialed, incoming and outgoing phone calls, an engineering map; showing all cell site tower locations, billing information, and alpha/numeric text messages, emails and GPS data" [SCR180-199] should not have been granted. Nothing in the statutory language of 18.20 of TCCP, authorized the release of cell site records.

Nevertheless, the granted orders authorized authorities to provide officers of the Houston Police Department the records obtained from Ford's cell phone, in order for HPD "record for any number(s) which are derived from record(s)

pertaining to the initial number." Those records were to include customer and subscriber information, including customer service and credit scores, the name and addresses of all subscribers to the telephone numbers revealed by the initial cellular records. Now, not only has the state obtained records pertaining to Ford, but also of his known associates located in the vicinity of HPD. (Order, pp. 21, 39-45).

The SCA should be held inapplicable to the present case. The SCA was enacted in 1986, nearly a decade before SMS messages, e-mails, HCD and applications became a worldwide phenomenon. Since this information of daily living and associational conduct is information regarding which Ford had a reasonable expectation of privacy and because it was information that he did not voluntarily convey to a third party, a search warrant should have been obtained.

Search warrants must be supported by probable cause that described the things to be seized and in regard to First Amendment protected materials, it must be described with scrupulous exactitude. *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

The applications submitted by Det L. Carrion, contain a mischaracterization of his own interviews with witnesses and a bank's blurry motion activated or time lapsed video. The application shows no indication of evidence found at the crime scene, does not state what items were going to be seized, it did not indicate that

Ford was a suspect, nor what was the decedent's cause or time of death. There is no cause stated to believe that there is evidence in the items to be seized, that Ford committed the murder of DE.

There are eleven States (California, Florida, Idaho, Montana, Pennsylvania, Washington, Colorado, Hawaii, Illinois, New Jersey, and Utah) that rejected the third-party record doctrine when it came out. Texas joined them in 1993, noting the opinions from several states. The Court in *Richardson v. State,* 865 S.W.2d 944, 947-948 (Tex. Crim. App. 1993) held that a telephone is a necessity of modern life and that an individual has no choice but divulge the number dialed to the telephone company. It also discussed that persons who use a phone disclose telephone numbers for the limited business purpose of obtaining telephone communication services and not for release to the general public.

The same type of information that the State obtained via their applications here, is the same type of information in which the Supreme Court expressed persons have a privacy interest in *Riley, infra,* as well. For example, "[a]n internet search and browsing history…can be found on an internet-enabled phone and could reveal an individual's private interest or concerns," and "data on a cell phone can also reveal where a person has been. Historic location information is a standard feature on many smart phones and reconstruct someone's specific movements down to the minute, not only around town but also within a particular building."

"Mobile application software on a cell phone, or 'apps' offer a range of tools for managing detailed information about all aspects of person's life." Because this is so the Supreme Court held that stronger protection is required for the contents of a cell phone as it is closer to the contents of one's home than to the contents of one's pocket. A search warrant is required. *Riley v. California*, 134 S.Ct. 2473, 2490, 189 L.Ed.2d 430 (2014). Further, *Richardson v. State*, demands stronger protection for information obtained without a warrant from third-party providers. *Richardson* held that using a pen register constitutes a "search" under Article I § 9 of the Texas Constitution. On remand, the Court of Appeals, while acknowledging the Court of Criminal Appeals' holding that a pen register was a search requiring a warrant, avoided deciding whether the pen register in Richardson violated Article 1, Section 9 of the Texas Constitution. It did so by finding that no pen register information was used to obtain the search warrant complained of in the case, and that no call originating from Richardson was caught on the pen register so he had no standing to complain. *Richardson v. State*, 902 S.W.2d 689, 692.

Here, the Court of Appeals used the third-party record doctrine and held that citizens' information is public "once an individual voluntarily exposes information to a third party." Appendix to Petitioner's Amended Brief at 22. It held that since Mr. Ford utilized a cell phone and subscribed to AT&T's phone service,

13

everything he did to use the phone was voluntarily disclosed to AT&T, whether he knew it was occurring or not.

However, the Court of Appeals misapplied the ruling in *Smith v. Maryland*, where the Supreme Court held there is no legitimate Fourth Amendment expectation of privacy in the phone number one dials on a phone. The *Smith* case is one that pre-dates cell phones, cell towers and the "cloud." The State attempts to equate HCD with a pen register. But it is much different. In *Smith* the pen register noted the electronic impulses emanating from a rotary dial and reported those numbers and those numbers alone. The pen register in *Smith* could not determine if a call was connected, if there was a call or its duration, what type of information was relayed or the location of the person dialing the rotary phone, through the information conveyed in the pen register.

In *United States v. Jones*, 132 S.Ct. 945, Justice Sotomayor in her concurrence addressed the issue, "even in the absence of a trespass, 'a Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." Historic location information is a standard feature on many smart phones and can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building." *Riley v. California*, 134 S.Ct. 2471, 2490 (2014). Because a person uses a third-party to provide a service, one does not necessarily give up their

14

expectation of privacy in the information provided voluntarily. *Richardson* rejected the third-party record doctrine because voluntarily provided records for a limited business purpose.

The National Association of Criminal Defense Lawyers has also taken a stand against the warrantless acquisition of HCD. See Amicus brief in *In re Applications of the United States of America for Historical Cell-Site Data,* 724 F.3d 600 (5th Cir. 2013). Commentators have noted Fourth Amendment concerns regarding third-party records, signaling the demise of the doctrine. "In our view, what is troubling about the data surveillance technologies that take advantage of the third party doctrine is not what information they gather, but, rather, the broad, indiscriminate, and continuous nature of the surveillance they facilitate, and the effects of that surveillance on general security in our persons, houses, papers, and effects. If we want to preserve reasonable expectations of privacy against these technologies, then we should confront the threats that they pose directly." The ABA Standards for Criminal Law Enforcement Access to Third-Party Records: Critical Perspectives From a Technology-Centered Approach to Quantitative Privacy, 66 Okla L Rev 919 (2014). And, the ABA Criminal Justice Section has issued standards to deal with third-party records that require issuance of a search warrant. See ABA Standards on Third-Party Records. And academics have noted the doctrine is dead. ABA Journal, Orin Kerr and Greg Nojeim, The Data

Question: Should the Third-Party Records Doctrine Be Revisited? (August 1, 2012)[arguing that the rule is an anachronism, from a time when there was no email, no world wide web, and people communicated by phone, fax and letter]. There were holes created in the doctrine so that the contents of some records could not be revealed, even if conveyed to a third party. So phone numbers could be revealed, but not phone conversations; and that email was stored, but not what was written in it. A world without third parties would be unworkable. If you wanted to deliver a package, you would have to leave your house instead of sending it through the mail. Orin Kerr, argued that the third party doctrine should not apply when the third party is not a receiver of information, but a mere conduit through which it passes. And Mr. Mojeim and Mr. Kerr agree that *Smith v. Maryland* rests on shaky ground. Dialing a phone number to place a call is not done by consent or really voluntary, it is required to use the necessity of life. We no longer travel long distances to communicate in person.

The Court should note that the third-party record doctrine is an anachronism. Almost everything we do depends on the involvement of third parties. As consumers, our private lives are handled by third parties: cell phones, e-mails, bank transactions, etc. Just because we 'willingly' decide to use those services we have not as citizens relinquished our expectation of privacy. When we contract with third parties to provide certain services and store or convey information through

calls, texts, apps and emails, we do not contract to convey our cell phones to the government as surveillance or tracking devices. By converting Ford's cell phone to such a tracking device, here, the state, seized his effects, his cell phone and its attributes, even if it did so virtually.

Federal and state courts have found that a warrant, based on probable cause, is required for historic cell tower data, especially involuntary transmitted information from our cell phones. *See Tracey v. Florida*, 152 So.3d 504, 515–16, n.9 (2014). Others have held that sufficient articulable facts under the SCA. *See Tracey v. Florida*, 152 So.3d 504, 515–16, n.8 (2014).

However, the Fifth Circuit and the 14th District Court of Appeals have held that only voluntarily conveyed information could be obtained under the SCA. The Government narrowed its request to only the phone numbers dialed into the phone in *In re Applications of the United States of America for Historical Cell-Site Data,* 724 F.3d 600 (5th Cir. 2013). The case was also a one-party case so no one could take the decision up to the United States Supreme Court. But still the government voluntarily narrowed its request in that case. In *Barfield v. State*, 416 S.W.3d 743 (Tex. App. Houston [14th Dist.], no pet), *Barfield* followed the Fifth Circuit opinion and involved a subpoena for post-indictment voluntarily conveyed information with regard to which a stored communications act complaint was raised.

The State's attempt to apply anachronistic doctrines and cases to this situation is not appropriate. This Court granted discretionary review not to decide what the law already is. It granted the PDR to decide what the law should be in today's technology dense world. This is unique information that did not exist when the cases came out and the store communications act was enacted. This information is different in kind and quantity. There was no change in the law to make it applicable to the changing data. The old cases do not address modern life, digital data, modern phones (mini computers), and the "cloud."

Physical intrusion is not the only way that person's property or effects can be illegally searched and seized. Here, the State repurposed information Ford provided for a limited purpose, changing it into government surveillance use, "the all seeing eye." This is not information the authorities observed on the open streets, they made his phone into their phone, his information was not his but theirs, to follow everything he was doing, for how long, and what topics he discussed. All this information was obtained by going through his private emails, SMS messages, GPS geo-location, HCD and applications that had been downloaded to his phone. The government essentially seized Ford's personal effects through his cell phone to observe inside and outside his home and at all times. His cell phone is not like a pair of pants or a bag of groceries, nor is the information it automatically relays through AT&T unbeknownst to him. Ford continued to have a reasonable

expectation of privacy in the contents of his phone despite the State's ability to seize it virtually. *See State v. Granville*, 423 S.W.3d 399, 412 (Tex. Crim. App. 2014).

Respectfully Submitted:

____/s/Cynthia E. Orr_____
Cynthia E. Orr
Bar No. 15313350
GOLDSTEIN, GOLDSTEIN & HILLEY
310 S. St. Mary's St.
29th Floor Tower Life Bldg.
San Antonio, Texas 78205
210-226-1463
210-226-8367 facsimile
whitecollarlaw@gmail.com

Attorney for Petitioner/Appellant,
JON THOMAS FORD

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document does comply with the word-count limitations of Tex. R. App. P. 9.4(i)(3) because it contains 4,803 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

By:__/s/ Cynthia E. Orr_____
CYNTHIA E. ORR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above Petitioner's Reply to Appellee's Brief on the Merits After Granting of Discretionary Review has been sent *via* E-file.Texas.gov, as registered participants, on this the 28th day of April, 2015 to the following:

Nicolas LaHood
District Attorney
Jay Brandon
Assistant District Attorney
Paul Elizondo Tower
101 West Nueva, Fourth Floor
San Antonio, Texas 78205
E-mail: jay.brandon@bexar.org,

____/s/Cynthia E. Orr_____
Cynthia E. Orr