David Eugene SWANK, Respondent,

v.

Victoria SWANK, Appellant.

No. WD 46646.

Missouri Court of Appeals,
Western District.

Nov. 23, 1993.

Debra Linn Snoke, Kansas City, for appellant.

Kenneth C. Hensley, Raymore, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and ELLIS, JJ.

PER CURIAM.

Victoria Swank appeals from a decree of dissolution, claiming that the trial court erred by approving a settlement agreement which was not in writing and which did not dispose of the entire marital estate, and by failing to find that the agreement was not unconscionable. Swank also claims that there was insufficient evidence to support the child support provisions in the decree of dissolution.

Reversed and remanded.

Victoria and David Eugene Swank were married on August 15, 1975, and they separated on November 21, 1990. Their marriage produced four children: Elizabeth Swank, born June 16, 1976; Jacqueline M. Swank, born August 31, 1977; Eugene David Swank, born September 29, 1980; and Rebekah M. Swank, born August 13, 1982.

On April 16, 1991, David filed a petition for dissolution of marriage, and Victoria responded with a cross-petition for dissolution. The parties appeared at a hearing on May 22, 1992, where they testified that a settlement agreement had been reached after lengthy negotiations. David testified that the agreement would apportion the parties' property as follows: Victoria was to receive the marital home; an additional parcel of real estate containing one hundred and sixty acres, as well as the leasehold income from that property; a lump sum payment of one hundred thousand dollars; a 1986 van; and the 1991 Chevrolet Cavalier which she had been driving.

David further testified that, pursuant to the agreement, he would receive the remaining farmland; the farm machinery; the remaining vehicles; an automotive business known as Carroll County Auto Body; a house in Independence, Missouri; and a house in Kansas City, Missouri. In addition, he acknowledged, he would be responsible for approximately half a million dollars'

worth of debt. Also, he testified, he would retain certain real estate in a trust for the sole benefit of the children, and he would give Victoria a number of savings bonds to be held for the children.

Victoria also testified at the hearing and corroborated David's testimony on the details of the agreement. In addition, she acknowledged that she would receive patronage dividends on the land assigned to her, and that David would receive patronage dividends on the land assigned to him. She also acknowledged, although she maintained it was unfair, that David would receive the patronage money which the couple had already paid in.

Repeatedly during her testimony, Victoria maintained that the agreement was unfair, and that she was being discriminated against by the terms of the agreement. Nevertheless, she testified, she was accepting the agreement because she believed that she had no choice.

Victoria was also questioned by her attorney about the need to reduce the proposed settlement agreement to writing, and the question prompted the trial court to make the following remarks about the settlement agreement:

VICTORIA'S ATTORNEY: You understand that that agreement will be reduced to writing here by myself or Mr. Hensley as a Property Settlement Agreement, and you will be required to sign that document?

VICTORIA: I understand that.

THE COURT: That will be incorporated by either reference, or in order to make the whole thing a complete thing, you might just incorporate it all, instead of having the separate property settlement agreement. Also you really ought to put into the file some semblance of Form 14 in order to cover that. If it is a deviation from what would normally be the amount, make a finding then they that the other schedule would be inappropriate or unjust according to the rule.

DAVID'S ATTORNEY: Put the property settlement in the decree, all the terms, and sent it to the attorneys?

THE COURT: Until the Court approved the property settlement agreement as to whether or not it is fair and not unconscionable, it really isn't binding on anyone as far as the settlement is concerned. You can make it either way you want to, but since you have so many things here that relate to the decree, you can incorporate it by reference, except as to custody, child support, visitation, and no maintenance, and the court costs and all that. Do it whichever way you would feel more comfortable with it. But the basic things, if you just made a decree and incorporate it right in the decree, it would have the signature of the Court as approving it, not only the recitation in .there, but also it should be probably just made a whole decretal-type thing.

Normally if we were doing this in a proper manner, we would have a separation agreement entered into court at the time of the hearing. It would be already signed, Make it part of the decree. Incorporate it altogether. Any other questions?

At the close of the hearing, the trial court instructed the parties as follows:

THE COURT: [Y]ou prepare a proposed decree based on this hearing today. . . . Prepare the proposed decree, approve it as to form yourself, and leave a place for her. When you get that decree, look it over. You know what we have agreed to. Make a finding that it is fair and not unconscionable. I can make that finding on the basis of the evidence.

The trial court's docket sheet indicates that, on June 9, 1992, a decree of dissolution was filed. However, a docket entry dated June 10, 1992 states that, on that day, the trial court set aside the decree because of objections to it. The 6/10/92 entry further states that any new proposed decree "must be approved by the respective attorneys before submission to the Court for approval."

A subsequent docket entry indicates that a new decree was filed on June 22, 1992. Part of this decree of dissolution consisted of a property settlement agreement which includ-

ed the terms described in the May 22, 1992 hearing. The decree also awarded custody of the parties' four children to Victoria, and ordered David to pay four hundred dollars per child per month in child support. However, the agreement did not comport with the trial court's final instructions at the hearing insofar as it did not include a space for Victoria's signature to indicate that she had approved the agreement.

On July 10, 1992, Victoria filed a motion to set aside the decree, claiming that the settlement agreement failed to dispose of all the property, and that the agreement was invalid because it was oral. The motion, which was untimely filed, was never ruled upon by the trial court.

■ In her first point on appeal, Victoria claims that the trial court's decree was erroneous because the decree incorporated the terms of an oral settlement agreement, and such an agreement is required by section 452.325.1, RSMo 1986 to be in writing.

Section 452.325.1 provides that the parties to an action for the dissolution of marriage "may enter into a written separation agreement." In *Turpin v. Turpin*, 570 S.W.2d 831, 834–35 (Mo.App.1978), this court interpreted this statutory language to mean that, if the parties do elect to enter into a separation agreement, that agreement must be in writing. This court has never departed from the rule of *Turpin*. *Yoder v. Horton*, 678 S.W.2d 901, 903 (Mo.App.1984); *Potter v. Potter*, 621 S.W.2d 123, 125 (Mo.App.1981); *Wilhoit v. Wilhoit*, 599 S.W.2d 74, 77 (Mo. App.1980).

■ David argues that this court's more recent decision of *Ezenwa v. Director of Revenue*, 791 S.W.2d 854, 859 (Mo.App.1990), which cites the general rule that stipulations may be oral, somehow implicitly overturns the rule we affirmed in *Turpin, Yoder, Potter,* and *Wilhoit*. However, the rule of *Turpin* and its progeny is limited to a very specific situation—a property settlement agreement in a dissolution action—and the rationale behind the rule is the need for

certainty and finality in a dissolution proceeding in order to avoid further dispute and litigation. *Wilhoit,* 599 S.W.2d at 77. *Ezenwa,* on the other hand, involves the revocation of a driver's license, a situation which is far removed from the specific circumstances and policy concerns addressed by *Turpin* and its progeny.

■ Victoria also claims that the trial court's decree was erroneous because it failed to dispose of all of the parties' marital property. Victoria contends that the decree failed to specify the following property which was divided by the parties' oral agreement: patronage funds, life insurance policies, prorated lease payments on Victoria's one hundred and sixty acres of land, crop redemption program payments, and five thousand dollars in checks at the Carroll County Trust Company.

Victoria is correct that these items, almost all of which were discussed during the May 22, 1992 hearing, were not mentioned in the section of the decree of dissolution which purported to be their property settlement agreement.

■ Victoria further claims that the trial court's decree was erroneous because the trial court failed to find that the settlement agreement was not unconscionable. However, a review of the record indicates that such a finding was made by the trial court. At the close of the hearing, the trial court instructed the parties as follows:

THE COURT: [Y]ou prepare a proposed decree based on this hearing today.... Prepare the proposed decree, approve it as to form yourself, and leave a place for her. When you get that decree, look it over. You know what we have agreed to. Make a finding that it is fair and not unconscionable. I can make that finding on the basis of the evidence.

Nevertheless, there remains the issue of whether the trial court erred in its finding that the agreement was not unconscionable. And, there are a number of troubling aspects to this case which suggest that the trial

court's finding is not supported by the evidence in the record. For example, the record is devoid of any clear and definitive evidence about the relative economic circumstances of the parties and the value of the properties being apportioned.

■ As a general rule, the trial court is not required to investigate and examine the economic circumstances of the parties and other relevant factors in determining the conscionability of the settlement agreement. *Dow v. Dow*, 732 S.W.2d 906, 908 (Mo. banc 1987). Instead, *Dow* allows the trial court to rely on the allegations of the pleadings and the assertions of the parties that their settlement agreement is equitable and not unconscionable. *In re Marriage of Mitchell*, 756 S.W.2d 949, 952 (Mo.App.1988).

However, there are a number of factors which distinguish the case at bar from the rule of *Dow*. First, unlike the circumstances in *Dow*, the parties in the case at bar did not appear before the court with an executed written settlement agreement. Second, one of the parties in the case at bar—Victoria Swank—repeatedly maintained during the hearing that the agreement was unfair.

In light of these unique circumstances, the purported agreement between the parties did not have the necessary indicia of reliability to justify the trial court's finding of conscionability without any firm evidence in the record concerning the economic circumstances of the parties and the value of the properties being apportioned by the agreement.[1] *Dow* does not relieve a trial court from the requirement that its decision meet the evidentiary requirements of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Arent v. Arent*, 759 S.W.2d 855, 856 (Mo.App.1988).

■ In her second point on appeal, Victoria claims that there was insufficient evidence to support the child support provisions in the decree of dissolution. Specifically, Victoria contends that there was no evidence regarding the factors which section 452.340, RSMo Supp.1991 requires the trial court to consider: the financial needs of the children

or the parties, the standard of living the child would have enjoyed had the marriage not been dissolved, and the children's educational needs and physical and emotional condition.

As indicated in the portions of the hearing transcript which are quoted above, neither party had submitted a Form No. 14 to the trial court when it made its decision concerning the award of child support. Thus, Victoria has arguably waived her argument on appeal about the issue of child support. *See, Hackmann v. Hackmann*, 847 S.W.2d 193, 194 (Mo.App.1993). However, since the child support award is based upon the economic circumstances of the parties, and because there was insufficient evidence in the record of this nature, we will set aside the child support award to be reconsidered in the light of a fuller record. Until that reconsideration occurs, child support will continue at the existing level.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial with reference to the economic portions of the decree.

All concur.

---

1. *Dardick v. Dardick*, 670 S.W.2d 865, 867–68 (Mo. banc 1984) holds that, in the absence of a request for findings under Rule 73.01(a)(2), the trial court is not required to assign a value to the marital property apportioned in a decree of dis-

solution. However, *Dardick* concerns a division of property which is decided by the court, and not property divided by the parties themselves in the context of a settlement agreement.