PD-0887-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/20/2015 4:32:01 PM
Accepted 7/22/2015 4:26:01 PM
ABEL ACOSTA
CLERK

**PD-0887-15**

# IN THE COURT OF CRIMINAL APPEALS
## OF THE STATE OF TEXAS

---

### GAREIC JERARD HANKSTON
*Petitioner/Appellant*

**v.**

### THE STATE OF TEXAS
*Respondent/Appellee*

---

On Petition for Discretionary Review from the Fourteenth Court of Appeals
in Cause No. 14-13-00923-CR, affirming the conviction in
Cause Number 1326559 from the 178th District Court of Harris County

---

### PETITION FOR DISCRETIONARY REVIEW

---

**ORAL ARGUMENT NOT REQUESTED**

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**ANGELA CAMERON**
Assistant Public Defender
Harris County, Texas
Texas Bar No. 00788672
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
angela.cameron@pdo.hctx.net

**Counsel for Appellant**

FILED IN
COURT OF CRIMINAL APPEALS

July 22, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:                                       Mr. Gareic Hankston
TDC#1893832
4304 Hwy 202
Beeville, Texas 78102

PRESIDING JUDGE:                    Hon. David Mendoza
178th District Court
Harris County, Texas
1201 Franklin Avenue, 9th floor
Houston, Texas 77002

TRIAL PROSECUTOR:                 Ms. Britni Cooper
APPELLATE PROSECUTOR:       Mr. Eric Kugler
Assistant District Attorneys
Harris County, Texas
1201 Franklin Avenue, 6th floor
Houston, Texas 77002

DEFENSE COUNSEL AT TRIAL:     Mr. Brent Mayr
4101 Washington Ave., 2nd Fl.
Houston, Texas 77007

                                            Mr. Chris Morton
1001 Texas Suite 1400
Houston, Texas 77002

DEFENSE COUNSEL ON APPEAL:    Ms. Angela Cameron
Assistant Public Defender
Harris County, Texas
1201 Franklin Avenue, 13th floor
Houston, Texas 77002

# TABLE OF CONTENTS

Identity of Parties and Counsel............................................................................................ii

Table of Contents.................................................................................................................iii

Index of Authorities............................................................................................................ v

Statement Regarding Oral Argument................................................................................. 1

Statement of the Case ......................................................................................................... 1

Statement of Procedural History ....................................................................................... 1

Grounds for Review............................................................................................................. 2

Reasons for Review.............................................................................................................. 2

Statement of Facts................................................................................................................ 3

Argument................................................................................................................................ 4

First Issue for Review .......................................................................................................... 4

> Did the Court of Appeals err when it "utilize[d] Fourth Amendment precedent" in determining Art. 1 Section 9 of the Texas Constitution was not violated when the State obtained Appellant's cell phone records without a warrant in light of *Richardson v. State,* 865 S.W.2d 844 (Tex. Crim. App. 1993)?

> The Court of Appeals' Holding..................................................... 4

> The Court of Appeals failed to properly address Appellant's State Constitutional Claim under Separate State Grounds ................................. 4

Second Issue for Review....................................................................................................... 7

> Did the Court of Appeals err in finding Appellant did not have a Fourth Amendment reasonable expectation of privacy in his cell phone records under the third-party doctrine?

> The Court of Appeals' Holding..................................................... 7

Expectation of Privacy.................................................................. 7

PRAYER ....................................................................................... 10

CERTIFICATE OF SERVICE ................................................................. 10

CERTIFICATE OF COMPLIANCE ......................................................... 11

APPENDIX ...................................................................................... 12

# INDEX OF AUTHORITIES

## Cases

*Barfield v. State,* 416 S.W.3d 743 (Tex. App. – Houston [14[th] Dist.] 2013, no pet.) .... 7, 8

*Crittenden v. State,* 899 S.W.2d 668 (Tex. Crim. App. 1995) ........................................... 5, 6

*Hankston v. State,* 14-13-00923-CR, 2015 WL 3751551(Tex. App. – Houston [14[th] Dist.] June 16, 2015)(mem. op. not designated for publication).................passim

*In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't,* 620 F.3d 304 (3d Cir. 2010) ....................................................... 9

*In re U.S. for Historical Cell Site Data,* 724 F.3d 600 (5th Cir. 2013) .................................. 7

*Johnson v. State,* 912 S.W.2d 227 (Tex. Crim. App. 1995) ................................................ 4, 5

*Ford v. State,* 444 S.W.3d 171(Tex. App. – San Antonio 2014, pet. granted)................... 9

*Richardson v. State,* 865 S.W.2d 844 (Tex. Crim. App. 1993) .....................................2, 4, 6

*Riley v. California,* 134 S.Ct. 2473 (2014) ........................................................................9, 10

*Smith v. Maryland,* 442 U.S. 735 (1979) ......................................................................... 6, 8

*United States v. Jones,* 132 S. Ct. 945 (2012) ....................................................................... 8

*United States v. Miller,* 425 U.S. 435 (1976) .................................................................... 6, 8

## Statutes

Tex. Pen. Code §22.011 .......................................................................................................... 1

## Rules

Tex. R. App. P. 66.3(b) ........................................................................................................... 2

Tex. R. App. P. 66.3(c)............................................................................................................ 2

## Constitutional Provisions

U.S. Const. amend IV ................................................................................................... .6

Tex. Const. Art. 1. §9.............................................................................................. 4, 6

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

## STATEMENT OF THE CASE

Mr. Hankston was charged with murder (C.R. at 14). *See* Tex. Pen. Code §19.02. Hankston entered a plea of "not guilty." (8 R.R. at 27). After a jury trial, Hankston was found guilty and sentenced by a jury to twenty (20) years imprisonment in the Texas Department of Corrections – Institutional Division (C.R. at 180). Timely notice of appeal was filed (C.R. at 185).

## STATEMENT OF PROCEDURAL HISTORY

In an unpublished opinion, the Fourteenth Court of Appeals affirmed Mr. Hankston's conviction. *Hankston v. State*, No. 14-13-00923-CR, 2015 WL 3751551 (Tex. App. – Houston [14th Dist.], June 16, 2015) (mem. op., not designated for publication). The Court upheld the trial court's denial of a Motion to Suppress Historical Cell Phone Records which were obtained without a warrant. The State used the record to establish that close to the time of the murder Hankston was near the complainant's home and that immediately thereafter his phone usage was more than any other comparable time frame in the preceding seven months. No motion for rehearing was filed. This petition is timely if filed on or before August 17, 2015.

1

## GROUNDS FOR REVIEW

Did the Court of Appeals err when it "utilize[d] Fourth Amendment precedent" in determining Art. 1 Section 9 of the Texas Constitution was not violated when the State obtained Appellant's cell phone records without a warrant in light of *Richardson v. State,* 865 S.W.2d 844 (Tex. Crim. App. 1993)?

Did the Court of Appeals err in finding Appellant did not have a Fourth Amendment reasonable expectation of privacy in his cell phone records under the third-party record doctrine?

## REASON FOR REVIEW

The Fourteenth Court of Appeals has decided an important question of state and federal law that has not been, but should be settled by the Court of Criminal Appeals. Tex. R. App. P. 66.3(b).

The Fourteenth Court of Appeals has decided an important question of state law in a way that conflicts with this Court's decision in *Richardson v. State,* 865 S.W.2d 844 (Tex. Crim. App. 1993). Tex. R. App. P. 66.3(c).

This Court is currently considering similar issues in *Ford v. State,* PD-1396-14. Oral argument was held on May 20, 2015.

## STATEMENT OF FACTS

Keith Brown, the complainant, was shot through his front door after someone tried to enter his home when Brown went to answer a knock on the door (8 R.R. at 181-186). Brown subsequently died from the gunshot wounds (10 R.R. at 143). Brown's nine year old son, M.B., was the only person to have claimed seeing the shooter (9 R.R. 107 & 147). When M.B. heard the knock on the door, he looked out the window and saw a man with a gun (9 R.R. 112-28). M.B. only saw the man for about 3-4 seconds (9 R.R. 137).

Gareic Hankston was the sixth suspect in the investigation. (10 R.R. 287-315). His arrest resulted from M.B. identifying Hankston, in the third photo lineup presented to M.B. over a period of several months. (9 R.R. 185-188; 11 R.R. 186).

The State's theory at trial was that Hankston shot Brown because Brown had been stalking Hankston's girlfriend for some time, including the night of the murder (10 R.R. at 14) (12 R.R. at 137-140). One officer testified this motive was "the most important piece of corroborating evidence" especially in light of the fact Brown had been at Hankston's girlfriend's home "only 45 minutes to an hour before he was killed." (11 R.R. at 36-37).

The State obtained Hankston's cell phone records without a warrant and instead relied on an ex parte court order (4 R.R. at 5-6). The records obtained included call logs as well as cell site information (10 R.R. at 340). The State used the records to 1) place Hankston in the vicinity of Brown's home near the time of the

murder and 2) to discredit Hankston's alibi witness by showing Hankston had called her shortly before and after the murder and 3) to show Hankston had a higher call volume during the "23 minutes immediately after the murder… than for any other 23 minute period in 206 days" (11 R.R. at 39-40).

## ARGUMENT

## First Issue for Review

> Did the Court of Appeals err when it "utilize[d] Fourth Amendment precedent" in determining Art. 1 Section 9 of the Texas Constitution was not violated when the State obtained Appellant's cell phone records without a warrant in light of *Richardson v. State,* 865 S.W.2d 844 (Tex. Crim. App. 1993)?

### *The Court of Appeals' Holding*

The Court of Appeals held the State's obtaining of appellant's cell phone records without a warrant did not violate Article 1, section 9 of the Texas Constitution because "he could not have a reasonable expectation of privacy in information he voluntarily conveyed to a third party" *Hankston v. State,* 14-13-00923-CR, 2015 WL 3751551, 5-6 (Tex. App. – Houston [14th Dist.] June 16, 2015, no pet.)(mem. op. not designated for publication).

### *The Court of Appeals failed to properly address Appellant's State Constitutional Claim under Separate State grounds.*

In overruling Appellant's Texas Constitutional claim, the Court of Appeals determined it should "utilize Fourth Amendment precedent" to address Appellant's claim, relying on language from this Court's opinions in *Johnson v. State,* 912 S.W.2d

4

227 (Tex. Crim. App. 1995) and *Crittenden v. State*, 899 S.W.2d 668 (Tex. Crim. App. 1995). The Court of Appeals stated:

> The Court of Criminal Appeals also noted that "[a] plain reading and comparison of the language of the Fourth Amendment and Art. I, § 9 reveals no substantive difference" and they both protect the same right. *Johnson,* 912 S.W.2d at 232. The Court of Criminal Appeals has further stated that:
>
> > Absent some significant difference in the text of the two provisions, or some historically documented difference in attitude between the respective drafters, there would be no apparent reason to prefer an interpretation of Article I, § 9 any different from our preferred interpretation of the Fourth Amendment. We will not read Article I, § 9 differently than the Fourth Amendment in a particular context simply because we *can.*
>
> *Crittenden v. State,* 899 S.W.2d 668, 673 n.8 (Tex. Crim. App. 1995).

*Hankston* at 6.

However, in *Johnson* this Court went on to say its opinion did not mean "that there will be a reversion to interpreting Art. I, § 9 in lock-step with the Supreme Court's interpretation of the Fourth Amendment…[and that]…if the Courts of Appeals and this Court decide to raise the ceiling of the freedom of Texas citizens from unreasonable searches and seizures, it will be done by choosing in individual cases to interpret Art. I, § 9 in a manner justified by the facts of the case, state precedent on the issue, and state policy considerations." *Johnson* at 234 (Tex. Crim. App. 1995).

The Court of Appeals further concluded that

Aside from citing to *Richardson*, appellant does not provide any reasoning as to why the Texas Constitution affords greater protection in this instance. Appellant cites to no authority for this proposition and does not point to any difference in the two provisions to warrant such a result.

*Hankston v. State,* at 6.

*Richardson* is enough authority for the proposition that Art. 1 § 9 provides greater protection than the Fourth Amendment regarding the warrantless obtaining of phone records. In *Richardson,* the Court found that under the Texas Constitution the use of pen register could be a search despite the Supreme Court's finding that it was not a search under the Fourth Amendment. *Richardson* specifically discussed the *Smith v. Maryland*, 442 U.S. 735 (1979) and *United States v. Miller*, 425 U.S. 435 (1976) third-party business records analysis upon which the Court of Appeals relies. The *Richardson* Court was "persuaded by the weight and persuasiveness of critical and judicial authority that the Supreme Court was wrong to conclude in *Smith* that there was no objectively reasonable expectation of privacy in the numbers one dials on the telephone." *Crittenden v. State,* 899 S.W.2d 668, 673 n.8 (Tex. Crim. App. 1995). Thus *Richardson* provides precedent that the Texas Constitution provides greater protection in regards to records from third parties and as such the Court of Appeals erred in not addressing Appellant's claim under the Texas Constitution and this Court should grant review.

## Second Issue for Review

Did the Court of Appeals err in finding Appellant did not have a Fourth Amendment reasonable expectation of privacy in his cell phone records under the third-party record doctrine?

### *The Court of Appeals' Holding*

The Court of Appeals held that the State's actions in obtaining Appellant's cell phone records did not violate Appellant's Fourth Amendment rights. In reaching this conclusion, the Court of Appeals stated:

> Based on this court's precedent,[1] appellant cannot successfully claim that the State's acquisition of his cell tower records from Sprint violated his reasonable expectation of privacy. The cell site records acquired by the State are simply the business records memorializing appellant's voluntary subscriber transaction with Sprint for the service he wanted from his cellular provider, i.e. the ability to transmit and receive data on Sprint's network of cell towers. *Ford v. State,* 444 S.W.3d 171, 188 (Tex. App.–San Antonio 2014, pet. granted) (citing *Barfield,* 416 S.W.3d at 748). The fact that this data happens to reveal the general location of appellant's cell phone, and presumably appellant himself, at given points in time is of no consequence to the legal analysis. *Id.* The State's actions did not violate appellant's Fourth Amendment rights because he could not have a reasonable expectation of privacy in information he voluntarily conveyed to a third party.

*Hankston v. State,* No. 14-13-00923-CR, 2015 WL 3751551, at *5 (Tex. App. June 16, 2015) (footnote added).

### *Expectation of Privacy*

The *Barfield* opinion is based on the reasoning of *In re U.S. for Historical Cell Site Data,* 724 F.3d 600, 610 (5th Cir.2013). As recognized by the *Barfield* court "[t]he

---

[1] The Court of Appeals is referencing its prior case of *Barfield v. State,* 416 S.W.3d 743 (Tex. App. – Houston [14th Dist.] 2013, no pet.).

Fifth Circuit opinion hinges on a determination of whether individuals have a 'reasonable expectation of privacy' in their location information transmitted each time they make a cell phone call and received and stored by their service provider." *Barfield* at 747. In finding no Fourth Amendment violation, the Fifth Circuit relied on the third-party doctrine of *Smith v. Maryland*, 442 U.S. 735 (1979) and *United States v. Miller*, 425 U.S. 435 (1976).

However, the validity of the third-party records doctrine as applied to technological advances is not certain. In her concurring opinion in *United States v. Jones*, Justice Sotomayor noted:

> it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. This approach is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks. People disclose the phone numbers that they dial or text to their cellular providers; the URLs that they visit and the e-mail addresses with which they correspond to their Internet service providers; and the books, groceries, and medications they purchase to online retailers. Perhaps, as Justice ALITO notes, some people may find the "tradeoff" of privacy for convenience "worthwhile," or come to accept this "diminution of privacy" as "inevitable," *post,* at 962, and perhaps not. I for one doubt that people would accept without complaint the warrantless disclosure to the Government of a list of every Web site they had visited in the last week, or month, or year. But whatever the societal expectations, they can attain constitutionally protected status only if our Fourth Amendment jurisprudence ceases to treat secrecy as a prerequisite for privacy. I would not assume that all information voluntarily disclosed to some member of the public for a limited purpose is, for that reason alone, disentitled to Fourth Amendment protection.

*United States v. Jones*, 132 S. Ct. 945, 957, 181 L. Ed. 2d 911 (2012) (internal citations omitted).

Additionally, whether the user of a cell phone voluntarily reveals his location to his service provider is also not settled law. The Third Circuit reached the opposite conclusion from the Fifth Circuit on this issue and stated:

> A cell phone customer has not "voluntarily" shared his location information with a cellular provider in any meaningful way. As the EFF notes, it is unlikely that cell phone customers are aware that their cell phone providers *collect* and store historical location information. Therefore, "[w]hen a cell phone user makes a call, the only information that is voluntarily and knowingly conveyed to the phone company is the number that is dialed and there is no indication to the user that making that call will also locate the caller; when a cell phone user receives a call, he hasn't voluntarily exposed anything at all."

*In re Application of U.S. for an Order Directing a Provider of Elec. Comm'n Serv. to Disclose Records to Gov't,* 620 F.3d 304, 317-18 (3rd Cir. 2010) (internal citations omitted).

Finally, as Justice Chapa pointed out in her dissent in *Ford v. State,*

> the Supreme Court has recently recognized that modern cell phones— now a "pervasive and insistent" part of modern life—present privacy concerns far beyond the founding principles of the Fourth Amendment and the circumstances of the founding era… The Court recognized that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse" and that "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person." *Id.* at 2488–89.

*Ford v. State,* 444 S.W.3d 171, 202 (Tex. App. – San Antonio 2014, pet. granted) citing *Riley v. California*, 134 S.Ct. 2473 (2014). Justice Chapa went on to conclude that "[s]imilar to the way that the search-incident-to-arrest doctrine was ill suited to the

9

digital data contained on cell phones seized during an arrest, the third-party doctrine is 'ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks.'" *Id.*

The issue of how the third-party record doctrine applies in light of the modern technology of cell phones is a novel question of law that has yet to be answered by this Court or U.S. Supreme Court and as such this Court should grant review.

**PRAYER**

For these reasons, Mr. Hankston prays this Court to grant discretionary review.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

*/s/ Angela Cameron*
**ANGELA CAMERON**
Assistant Public Defender
1201 Franklin, 13th floor
Houston Texas 77002
(713) 368-0016
TBA No. 00788672
email: angela.cameron@pdo.hctx.net

**CERTIFICATE OF SERVICE**

I certify that I provided a copy of the foregoing petition to the Harris County District Attorney and the State Prosecuting Attorney via e-filing service on the 20th day of July 2015.

*/s/ Angela Cameron*
**ANGELA CAMERON**

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. Proc. 9.4(e)(i).

1.    This petition for discretionary review contains 3,236 words printed in a proportionally spaced typeface.

2.    This brief is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 12 point font in footnotes produced by Microsoft Word software.

3.    Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4.    Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Tex. R. App. Proc. 9.4(j), may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/s/ Angela Cameron
**ANGELA L. CAMERON**

2015 WL 3751551
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

DO NOT PUBLISH—TEX. R. APP. P. 47.2(B).
Court of Appeals of Texas,
Houston (14th Dist.

Gareic Jerard **Hankston**, Appellant
v.
The State of Texas, Appellee

NO. 14–13–00923–CR    |
Memorandum Opinion filed June 16, 2015

**On Appeal from the 178th District Court, Harris County,
Texas, Trial Court Cause No. 1326559**

**Attorneys and Law Firms**

Devon Anderson and Eric Kugler, for The State Bar of Texas.

Angela Lee Cameron, for Gareic Jerard Hankston.

Panel consists of Justices Christopher, Donovan, and Wise.

## MEMORANDUM OPINION

Ken Wise, Justice

 **\*1**  Appellant Gareic Jerard Hankston was convicted of murder and sentenced to twenty years in prison. Appellant contends that the evidence is legally insufficient to support his conviction for murder and that the trial court erred by failing to grant his pre-trial motion to suppress his cell phone records. We affirm.

## BACKGROUND

The complainant, Keith Brown, stalked appellant's girlfriend Crystal Jordan on several occasions. The complainant lived two houses down from Jordan's mother's house. One day, when Jordan was living at her mother's house, the complainant watched Jordan wash her car and took his shirt off to pose for her. The complainant would also leave notes on Jordan's door. On one occasion, a neighbor saw

the complainant standing in Jordan's mother's driveway and the complainant told the neighbor that he was "protecting their house." Jordan's stepfather also found the complainant's cell phone outside her window. When Jordan moved to her apartment complex, the complainant approached her and asked if she needed help with her groceries. Jordan stated that this was strange because she did not know how the complainant found out where she had moved. Jordan testified that all of these encounters scared her.

On May 19, 2011, Jordan was at home in her apartment with her daughter when she heard a soft knock at the door. Jordan asked who was there, but no one responded. The person knocked again and Jordan looked out the front window and saw a dark-skinned male standing outside. Jordan also saw a white van that she knew belonged to the complainant. At 8:44 p.m, Jordan called 911, her parents, and her boyfriend, the appellant.

The police responded to the 911 call and arrived at Jordan's apartment at 8:57 p.m. Appellant and Jordan's parents were also present. Jordan testified that appellant was aware of the complainant's stalking but he did not seem upset or bothered by the knocking incident. However, Jordan also stated that appellant did not think the police were taking the situation seriously and the police told appellant to be quiet during the investigation. Everyone left Jordan's apartment in separate cars. Jordan and her daughter went to Jordan's grandmother's house for about five minutes and then went to her mother's house. While at her mother's house, Jordan heard gunshots. Jordan stated that she did not know where appellant was when she heard the gunshots. Jordan testified that appellant came to her mother's house after she got there, but could not remember the exact time.

The complainant's wife Tonie was not aware that her husband had been stalking Jordan. Tonie testified that on May 19, the complainant came home around 9:00 p.m. Tonie and the complainant argued in the front yard and Tonie knew that the complainant had taken PCP because he was nonresponsive to her. The complainant was also distracted because he was looking at someone wearing jeans and a white t-shirt walking down the street. Tonie went back inside the house, but when she tried to close the door, the complainant told her not to leave him out there. The complainant eventually came inside the house and began sweeping the front room. The complainant's four children were all home at the time.

**\*2** Shortly after the complainant went inside his house, someone started banging loudly on the front door. When the complainant asked who was there, the person responded by saying "it's your son-in-law, Chad." [1] The complainant opened the blinds to look outside, turned off the porch light, and then began slowly opening the door. The complainant opened the door a few inches, but then attempted to shut it when the person outside began pushing it back. The person then fired six gunshots through the door, striking the complainant with four of them. The complainant attempted to crawl to the bedroom but died before he could get there. The complainant's son Gregory called 911 at 9:32 p.m. and the police were dispatched to the scene at 9:34 p.m.

[1]    The complainant did not have a son-in-law named Chad or any relatives named Chad. Tonie testified that the complainant used to produce music with a man named Chad but they had not spoken in at least a year. Tonie also testified that her son Gregory had an uncle named Chad who lived in Louisiana but he and the complainant had never met or spoken.

The complainant's nine-year-old son Malik was in the front living room when the shooting occurred. After the knock on the door, Malik ran to the window and saw a man holding a black handgun. Malik made eye contact with the man for several seconds. Malik described the man to the police as a bald, dark-skinned male wearing a white tank top and jeans. Although Malik told the police that he saw two other people, he could not testify at trial as to whether he was positive that he saw the other people. Malik was shown three different photo spreads throughout the course of the investigation. On November 4, 2011, Malik selected appellant's photo from the third photo spread he was shown and identified appellant as the man he saw with a gun outside the door before the shooting.

At trial, the State offered cell tower records along with the expert testimony of Officer Robert Brown to establish appellant's whereabouts during times relevant to when the complainant was killed. The State also used appellant's cell phone records to show who he called and when the phone calls were made. The State obtained appellant's cell phone records by using a subpoena. The State did not obtain a warrant. The trial court denied appellant's pre-trial motion to suppress the cell phone records.

On September 27, 2013, the jury found appellant guilty of murder and assessed punishment at twenty years in prison.

## ISSUES AND ANALYSIS

Appellant contends that the evidence is legally insufficient to support his conviction for murder. Appellant also asserts that the trial court erred by denying his motion to suppress his cell phone records because the State obtained those records without a warrant in violation of the Fourth Amendment and Article I, section 9 of the Texas Constitution.

### I. The Evidence is Legally Sufficient to Convict Appellant of Murder

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Gear v. State,* 340 S.W.3d 743, 746 (Tex.Crim.App.2011); *see also Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979). The jury is the exclusive judge of credibility of the witnesses and the weight to be given to the evidence. *See Isassi v. State,* 330 S.W.3d 633, 638 (Tex.Crim.App.2010). Further, we defer to the jury's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* This standard applies to both circumstantial and direct evidence. *Id.* We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993).

**\*3** The jury was instructed on murder and the law of parties. A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. Tex. Penal Code § 19.02(b)(1). A person may be guilty as a party to murder if the defendant committed the offense by his own conduct or by the conduct of another for which he is criminally responsible. Tex. Penal Code § 7.01(a). "A person is criminally responsible for an offense committed by the conduct of another if: ... acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

Appellant argues that the evidence to convict him of murder is legally insufficient because (1) Malik's identification was unreliable; (2) the description of the vehicle fleeing the scene was different from the vehicle being driven by appellant;

(3) appellant did not have a motive to kill the complainant; and (4) appellant's cell phone records do not conclusively establish that he was at the complainant's house during the shooting. Although appellant attacks each piece of evidence individually, the court must "consider the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007).

Appellant suggests that Malik's identification was unreliable because Malik (1) was only nine years old at the time; (2) stated that appellant was bald with no tattoos when appellant has hair and tattoos; (3) told his mom on the night of the shooting that he did not see the shooter's face; and (4) felt pressured to select someone in the photo spread. Malik testified that he saw appellant holding a gun outside the door before the shooting occurred. Malik made eye contact with the appellant for three to four seconds. Although Malik described the appellant as bald, the State offered a photograph at trial in which the sides of appellant's head were bald three weeks before the shooting occurred. Malik selected appellant's photograph out of a photo spread presented by Officer Condon. It took Malik three to four minutes to select appellant's photo and he stated that he was "pretty sure" it was him. At trial, Malik testified that he was confident that appellant was the man he saw outside his window on the night of the shooting. The determination of what weight to be given to testimonial evidence rests within the sole province of the jury because it turns on an evaluation of credibility and demeanor. *Davis v. State,* 177 S.W.3d 355, 359 (Tex.App.–Houston [1st Dist.] 2005, no pet.). The jury was free to believe or disbelieve any or part of Malik's testimony. *See id.*

The State also offered evidence to corroborate Malik's testimony, including (1) the description of appellant's vehicle; (2) appellant's motive for the killing; and (3) appellant's cell phone records reflecting his whereabouts during the shooting and phone calls he made before and after the shooting.

The State established that the appellant's car matched the description of a vehicle seen fleeing the scene after the shooting. Officer Burrow testified that he spoke to a neighbor who saw a 2000 or 2006 burgundy Honda Civic being driven from the scene. The appellant was driving a 2002 burgundy Honda Accord on the night of the shooting. Officer Burrow testified that the police examined photographs of Honda Civics and Honda Accords from those years and found that they were "pretty similar."

The jury also heard evidence that appellant had a possible motive for the killing. The shooting occurred less than one hour after the complainant showed up at Jordan's apartment. Appellant knew that the complainant had stalked Jordan on several occasions and knew the complainant knocked on her door that night. Jordan testified that she and appellant did not think the police were taking the stalking seriously enough and that the police told appellant to be quiet during their investigation. Although Jordan testified that appellant seemed normal that night, she stated that "[h]e wasn't happy with the situation." Officer Burrow also testified that he believed the crime was personally motivated because the shooter did not wear a mask or try to force entry into the home and he banged loudly on the door and shot appellant through the door as soon as he saw that someone was there.

**\*4** Appellant's phone records established that he was in the vicinity of the complainant's home during the shooting. Although appellant contends that this is the same area where Jordan's mother's house is located, Jordan testified that she did not know where the appellant was when she heard the gunshots. The cell phone records also reflected that there was a lull in activity on appellant's phone from 9:24 p.m. to 9:32 p.m., when the shooting occurred. During this period of time, there were no incoming or outgoing communications on appellant's phone. The complainant's son called 911 at 9:32 p.m. Officer Burrow testified that at 9:32 p.m., there was a burst in activity on appellant's phone in which thirty-eight telecommunications were exchanged from 9:32 p.m. to 9:55 p.m. Officer Burrow stated that this was the highest volume in appellant's phone records over the course of a seven-month period.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. *See Gear,* 340 S.W.3d at 746. Because the evidence is legally sufficient to convict appellant as the principal, we need not determine whether the evidence is legally sufficient to convict appellant of murder as a party to the shooting. *See Barnes v. State,* 62 S.W.3d 288, 299 (Tex.App.–Austin 2001, pet. ref'd) ("When different theories of liability are submitted to the jury in the disjunctive, a general verdict is sufficient if the evidence supports one of the theories.") (citing *Rabbani v. State,* 847 S.W.2d 555, 558–59 (Tex.Crim.App.1992)); *see also Morris v. State,* 892 S.W.2d 205, 208 (Tex.App.–Texarkana 1994, no pet.) (holding that "even if the law of parties was incorrectly applied, it would be harmless error because the conviction could be supported on the State's main

theory that [the defendant] was a primary actor because the evidence clearly supported such a theory").

We overrule appellant's first issue regarding the legal sufficiency of his conviction.

## II. The Trial Court Did Not Err by Denying Appellant's Motion to Suppress

In his second issue, appellant contends that the State's acquisition of his cell phone records violated the Fourth Amendment to the United States Constitution and Article I, section 9 of the Texas Constitution.

When reviewing a trial court's ruling on a motion to suppress, we apply an abuse of discretion standard and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State,* 348 S.W.3d 919, 922 (Tex.Crim.App.2011). We view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State,* 414 S.W.3d 184, 192 (Tex.Crim.App.2013). Although we generally defer to a trial court's determination of facts and credibility, we review a constitutional legal ruling, such as whether a search or seizure governed by the Fourth Amendment occurred in a particular case, under a de novo standard of review. *Wall v. State,* 184 S.W.3d 730, 742 (Tex.Crim.App.2006).

### A. Fourth Amendment Challenge

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV; *Walter v. State,* 28 S.W.3d 538, 540 (Tex.Crim.App.2000). The capacity to claim the protection of the Fourth Amendment depends upon whether the person has a legitimate expectation of privacy in the invaded place. *Walter,* 28 S.W.3d at 541. Under the Fourth Amendment, a search conducted without a warrant issued upon probable cause is "*per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions." *Reasor v. State,* 12 S.W.3d 813, 817 (Tex.Crim.App.2000) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973)).

In arguing that he has a reasonable expectation of privacy in his historical cell site records, appellant relies on the Supreme Court's decision in *United States v. Jones,* 132 S.Ct. 945 (2012), and the Third Circuit's decision in *In re Application of United States for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't,* 620 F.3d 304 (3d Cir.2010). However, this court recently rejected appellant's argument in *Barfield v. State. See* 416 S.W.3d 743 (Tex.App.–Houston [14th Dist.] 2013, no pet.).

**\*5** In *Barfield,* the State used third-party cell tower records to establish the defendant's whereabouts during times relevant to when the complainant was murdered. *Id.* at 745. The State obtained the records through use of a subpoena and did not obtain a search warrant. *Id.* The defendant in *Barfield* similarly argued that the State violated his reasonable expectation of privacy because it obtained the cell tower records without a warrant. *Id.* at 748. This court in *Barfield* disagreed and reasoned that:

> When an individual knowingly exposes his activities to third parties, he surrenders Fourth Amendment protections, and, if the Government is subsequently called upon to investigate his activities for possible violations of the law, it is free to seek out these third parties, to inspect their records, and to probe their recollections for evidence.

*Id.* (quoting *In re Application of United States for Historical Cell Site Data,* 724 F.3d 600, 610 (5th Cir.2013) (internal quotations omitted)); *Reporters Comm. for Freedom of Press v. Am. Tel. & Tel. Co.,* 593 F.2d 1030, 1043 (D.C.Cir.1978). The mere fortuity of whether or not the third party, in its own discretion, elects to store the information makes no constitutional difference. *Barfield,* 416 S.W.3d at 748. Once an individual exposes information to a third party, it can be used for any purpose, including conveying it to law enforcement authorities. *Id.*

The court also emphasized the fact that the transmission of location information by the cell user to the service provider is voluntary because the user knows generally that "cell phones exchange signals with nearby cell towers, that if they are in an area without network towers, their call will not connect, and if they are in an area with heavy cell usage, they may also have trouble connecting." *Id.* The user voluntarily decides to obtain a cell phone, choose a provider, and make a call from a particular location. *Id.* at 748–49. Thus, in relying primarily on the Fifth Circuit's decision in *In re Application of United States,* this court held that the State's obtaining of cell tower records from a third-party provider does not violate a defendant's reasonable expectation of privacy. *Id.* at 749.

Appellant asks this court to reconsider its holding in *Barfield,* arguing that it was wrongly decided. Appellant directs this court to the Third Circuit's decision in *In re Application of United States for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't. See* 620 F.3d at 317–18 (holding that a "cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way"). However, we decline appellant's invitation to review our prior decision on this issue. Based on this court's precedent, appellant cannot successfully claim that the State's acquisition of his cell tower records from Sprint violated his reasonable expectation of privacy. The cell site records acquired by the State are simply the business records memorializing appellant's voluntary subscriber transaction with Sprint for the service he wanted from his cellular provider, i.e. the ability to transmit and receive data on Sprint's network of cell towers. *Ford v. State,* 444 S.W.3d 171, 188 (Tex.App.–San Antonio 2014, pet. granted) (citing *Barfield,* 416 S.W.3d at 748). The fact that this data happens to reveal the general location of appellant's cell phone, and presumably appellant himself, at given points in time is of no consequence to the legal analysis. *Id.* The State's actions did not violate appellant's Fourth Amendment rights because he could not have a reasonable expectation of privacy in information he voluntarily conveyed to a third party.

### B. Texas Constitution Challenge

**\*6** Appellant also contends that the State's acquisition of his cell phone records without a warrant violated his rights under Article I, section 9 of the Texas Constitution because the Texas Constitution provides greater protection than the Supreme Court decisions that address the Fourth Amendment. In support of his contention, appellant cites to *Richardson v. State,* a case in which the Court of Criminal Appeals held that "the use of a pen register may well constitute a 'search' under Article I, § 9 of the Texas Constitution." 865 S.W.2d 944, 953 (Tex.Crim.App.1993).

Like the Fourth Amendment, the Texas Constitution provides that "[t]he people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches...." Tex. Const. art. I, § 9. In *Heitman v. State,* the Court of Criminal Appeals acknowledged that it can interpret this provision in a manner that grants defendants greater rights under Article I, section 9 of the Texas Constitution than afforded by the Supreme Court's interpretation of the United States Constitution. [2] 815 S.W.2d 681, 690 & n.1

(Tex.Crim.App.1991). Despite this conclusion, at least one appellate court has reasoned that merely "[b]ecause we *can* do so, however, does not mean we *should* do so." *Johnson v. State,* 864 S.W.2d 708, 718 (Tex.App.–Dallas 1993), *aff'd,* 912 S.W.2d 227 (Tex.Crim.App.1995) (emphasis in original). The Court of Criminal Appeals also noted that "[a] plain reading and comparison of the language of the Fourth Amendment and Art. I, § 9 reveals no substantive difference" and they both protect the same right. *Johnson,* 912 S.W.2d at 232. The Court of Criminal Appeals has further stated that:

> Absent some significant difference in the text of the two provisions, or some historically documented difference in attitude between the respective drafters, there would be no apparent reason to prefer an interpretation of Article I, § 9 any different from our preferred interpretation of the Fourth Amendment. We will not read Article I, § 9 differently than the Fourth Amendment in a particular context simply because we *can.*

*Crittenden v. State,* 899 S.W.2d 668, 673 n.8 (Tex.Crim.App.1995).

[2]   As noted by the First Court of Appeals, at least one scholarly treatise has recognized that there are only three cases in which the Court of Criminal Appeals has construed Article I, section 9 more broadly than the Fourth Amendment. *Rothenberg v. State,* 176 S.W.3d 53, 59 n.7 (Tex.App.–Houston [1st Dist.] 2004, pet. ref'd) (citing 40 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice & Procedure § 5.04 (2d ed. 2011)).

Aside from citing to *Richardson,* appellant does not provide any reasoning as to why the Texas Constitution affords greater protection in this instance. Appellant cites to no authority for this proposition and does not point to any difference in the two provisions to warrant such a result. Thus, we utilize Fourth Amendment precedent to conclude that the State's acquisition of appellant's cell phone records does not violate Article I, section 9 of the Texas Constitution.

We overrule appellant's first issue regarding his motion to suppress.

### CONCLUSION

We conclude that the evidence is legally sufficient to convict the appellant of murder and the trial court did not err by denying appellant's motion to suppress.

**All Citations**

Not Reported in S.W.3d, 2015 WL 3751551

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

---